IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAMIDA H. NAFICY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 CV 5408 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Hamida H. Naficy ("Naficy"), in her Fifth Amended Complaint, alleges that defendant Illinois Department of Human Services ("IDHS") discriminated and retaliated against her on the basis of her national origin (Iranian) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and discriminated and retaliated against her in violation of 42 U.S.C. § 1981. (Dkt. No. 31 ("5th Am. Compl.").) On July 12, 2010, this court granted IDHS's motion to dismiss Naficy's § 1981 claims. (Dkt. No. 37.) Now pending before the court is IDHS's motion for summary judgment on Naficy's remaining Title VII claims. (Dkt. No. 58.) For the reasons set forth below, IDHS's motion is granted.

1

BACKGROUND[1]

IDHS is a state agency responsible for providing Illinois residents with access to a variety of public aid programs, including a number of mental health institutions in Illinois. (Dkt. No. 60 ("IDHS's SOF") ¶ 5.) Naficy currently works at IDHS's Madden Mental Health Center ("Madden") as a Social Worker III, and is a member of the American Federation of State, County and Municipal Employees ("AFSCME"). (*Id.* ¶¶ 6-8.)

In 2010, IDHS closed one of its facilities, the Howe Developmental Center in Tinley Park, Illinois ("Howe"). (*Id.* ¶ 20.) Pursuant to a collective bargaining agreement in effect between AFSCME and IDHS at all relevant times in 2010 ("CBA"), IDHS was contractually obligated to follow certain procedures when laying off employees or restructuring its workforce. (*Id.* ¶¶ 9-10; *see also* IDHS's Ex. A, Ex. 1 ("Art. XX – Layoff").) Specifically, because IDHS employees at Howe were subject to layoff, they were eligible to "bump" covered employees at other IDHS facilities pursuant to the terms of the CBA. (*Id.* ¶ 21.[2]) Naficy's pending Title VII

---

[1] In its reply brief, IDHS has asked the court to strike a number of Naficy's responses to IDHS's Statement of Uncontested Facts, as well as certain of Naficy's additional facts, as improper under the Federal Rules of Civil Procedure and Local Rule 56.1. The court has considered IDHS's arguments in assessing the parties' assertions of fact and, where necessary, has addressed specific areas of concern.

[2] Naficy contends that IDHS "has offered no admissible evidence" to support the statements set forth by IDHS's Manager of Bureau of Labor Relations, Mark Samaras ("Samaras"), on this point. (Dkt. No. 63 at 1-17 ("Naficy's Resp. to IDHS's SOF") ¶ 21.) It is undisputed, however, that the CBA contains bumping provisions with respect to layoffs, whereby a more senior employee can displace a less senior employee from his or her job position under a set of rules contained within the CBA. (*See id.* ¶ 12.) The plain language of the CBA applies these provisions both to "the immediate work location" and to IDHS positions elsewhere in the same county. (*See, e.g.*, Art. XX – Layoff, § 3(d).) Samaras has testified that he "was personally responsible for administering Article XX of the CBA as it related to the closure of Howe," (IDHS's Ex. A ("Samaras's Aff.") ¶ 16), and Naficy has not indicated that the potential impact of the Howe closure on other IDHS employees is actually in dispute. The court therefore

2

claims are based on IDHS's execution of the CBA's bumping provisions with respect to the Howe layoffs in 2010.  (*Id.* ¶¶ 59-63; *see also* 5th Am. Compl. ¶¶ 19-22.)

1.      Relevant CBA Provisions

The CBA requires IDHS to notify all employees potentially affected by a layoff of their rights under the CBA.  (IDHS's SOF ¶ 10.)  Specifically, IDHS is required to provide employees with information regarding (1) IDHS's seniority roster of employees subject to layoff and potentially affected by layoff; (2) IDHS's vacancy list; and (3) the "bumping" options for employees potentially affected by layoff.  (*Id.* ¶ 11.)

"Bumping" is a process whereby a more senior employee can displace a less senior employee from his or her job position under a set of rules contained within the CBA.  (*Id.* ¶ 12.)  The CBA includes six identified "bumping priorities," identified as steps one through six.  (Art. XX – Layoff, §§ 3(c)-(h).)  First, an employee subject to layoff "must bump the least senior employee in the same position classification at their work location."  (IDHS's SOF ¶ 14 (citing Art. XX – Layoff, § 3(c)).[3])  Second, "if an employee is unable to bump at the same work location, then an employee must bump the least senior employee in the same position

---

accepts IDHS's assertion of fact on this point as true.

[3] Naficy has denied IDHS's statement of fact on this point, but does not cite to any portion of the CBA refuting Samaras's summary of the relevant CBA provisions.  (*See* Naficy's Resp. to IDHS's SOF ¶¶ 13-19.)  This approach is inconsistent with Federal Rule of Civil Procedure 56(c), which states, "A party asserting that a fact . . . is genuinely disputed must support this assertion by citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also* N.D. Ill. Local R. 56.1(b)(3)(B).  The court therefore accepts paragraphs thirteen through nineteen of IDHS's statement as undisputed.  The court further notes that the accuracy of Samaras's interpretation of the CBA is not directly at issue in this lawsuit.  Rather, as discussed in detail below, Naficy must demonstrate a genuine issue of material fact on the question of whether IDHS discriminated against her in its implementation of the Howe layoffs.

3

classification in the county where their current position is located." (*Id.* (citing Art. XX – Layoff, § 3(d)).) Third, "[i]f neither of these options is available, then an employee must bump into the next lower position in the same position classification series at the same work location." (*Id.* ¶ 15 (citing Art. XX – Layoff, § 3(e)).) Fourth, "if this option is not available, then an employee must bump into the next lower position in the same position classification series in the county in which their current position is located." (*Id.* (citing Art. XX – Layoff, § 3(f)).) If none of the first four bumping options are available, "then an employee must bump into a position for which they were previously certified" at either the same work location or elsewhere in the county. (*Id.* ¶ 16 (citing Art. XX – Layoff, § 3(g)-(h)).)

The CBA's bumping options are exercised by seniority. (IDHS's SOF ¶ 13.) Specifically, the CBA states,

> <u>Starting with the highest bargaining unit and pay grade, employee(s) may choose to exercise or waive his/her available bump option</u> in (c) through (i),[4] if applicable. The employee(s) must make his/her selection known to the Employer at the time of his/her bump meeting and such selection shall be final. An employee may still opt to be laid off at any time prior to the implementation of the bump, however the Employer shall not be required to modify the layoff plan.

(Art. XX – Layoff, § 3(b) (emphasis added).)

According to Samaras, "[e]mployees who waive their bumping option are not guaranteed employment with IDHS." (*Id.* ¶ 17 (citing Samaras's Aff. ¶ 13).) Although the CBA states, "[i]n the event that an employee waives or refuses to accept an available bump under this provision, the employee shall be laid off," (Art. XX – Layoff, §§ 3(c)-(d); IDHS's SOF ¶ 14), an

---

[4] Section 3(i) states, "Notwithstanding [§§ 3(c)-(h)], an employee subject to layoff shall be permitted to exercise bumping options at his/her worksite and/or work location, seniority permitting, before bumping to another worksite or work location." (Art. XX – Layoff, § 3(i).)

4

employee who waives his or her bumping option may nevertheless be allowed to apply for a vacant position with IDHS under the terms of the CBA. Specifically, the CBA requires IDHS to "offer[ ] a transfer or voluntary reduction within the agency's available bargaining unit vacancies in lieu of layoff, . . . provided the employee is qualified for such vacancy." (Art. XX – Layoff, § 3(j); IDHS's SOF ¶ 18; *see also* Art. XX – Layoff, § 3(b) ("An employee(s) who chooses to waive his/her available bump option, or if no bump option was available, may choose to exercise his/her right to a Transfer or Voluntary Reduction in Lieu of Layoff (j), if applicable and seniority permitting.").) Vacancies are not offered "until all eligible employees have exercised their right to bump." (IDHS's SOF ¶ 19; *see also* Art. XX – Layoff, § 3(b) ("Agency vacancies shall be offered, if applicable and seniority permitting, upon completion of the bumping process, (c) through (i).").)

2. IDHS's Execution of the 2010 Howe Layoffs

On January 22, 2010, Naficy and other IDHS employees potentially affected by the Howe closure received a letter from IDHS notifying them of a possible layoff. (IDHS's SOF ¶ 29.) According to the January 22, 2010 letter, Naficy's potential bump options at Madden included the following positions: (1) Social Worker III; (2) Social Worker III (Spanish Speaking); (3) Social Worker III (part-time); and (4) Social Worker II. (*Id.* ¶ 30; *see also* Naficy's Resp. to IDHS's SOF ¶ 30 ("Plaintiff admits this is what the letter says . . . .").) The January 22, 2010 letter also notified Naficy that she could choose not to bump into another position and instead select an IDHS vacancy for which she was qualified, seniority permitting. (*Id.*) The layoff notification included a list of potential vacancies that employees could choose

5

from, seniority permitting, if they chose to waive their right to bump. (IDHS's SOF ¶ 49.[5])

On February 2, 2010, IDHS and AFSCME representatives met with various IDHS employees, including Naficy, at Howe to discuss each employee's options under the CBA. (*Id.* ¶ 32.) As employees exercised their bumping options, Naficy was bumped from her position as a Social Worker III by a more senior IDHS employee. (*Id.* ¶ 33.) By the time Naficy met with IDHS and AFSCME representatives to make her election under the CBA, there was no full-time Social Worker III position at Madden available for Naficy to bump into, due to the bumping choices made by IDHS employees with more seniority. (*Id.* ¶ 34.[6]) It is undisputed that Naficy is not a fluent Spanish speaker. (*Id.* ¶ 35.)

At the February 2, 2010 meeting, Samaras informed Naficy that, as a result of bumping options exercised by more senior IDHS employees, her only bump option was to a part-time Social Worker III position. (*Id.* ¶ 39.) Naficy was not offered the opportunity to bump into a Social Worker II position at Madden, or at any other IDHS facility. (Dkt. No. 63 at 18-23 ("Naficy's Add'l Facts") ¶¶ 85, 87.) When Naficy questioned "why options that were previously listed that [Naficy] was eligible for were no longer available," she received no explanation. (*Id.*

---

[5] Samaras's affidavit testimony based on his own experience as Manager of Bureau of Labor Relations during the Howe closure is sufficient "admissible evidence" to support this assertion of fact. *See* Fed. R. Civ. P. 56(c)(1)(A), (c)(4) (allowing affidavit testimony in support of summary judgment). The court therefore rejects Naficy's denial of this statement as unsupported. (*See* Naficy's Resp. to IDHS's SOF ¶ 49.)

[6] Although Naficy denies this statement of fact, she does not cite any specific evidence contradicting either Samaras's testimony on this point or the documentary evidence supporting his testimony. The court therefore accepts this statement as undisputed, while noting that the statement presumably excludes the available Social Worker III (Spanish Speaking) position. (*See also* Naficy's Add'l Facts ¶ 85 ("there were no full time [S]ocial Worker III positions available with less senior Social Worker III at Madden except a bilingual Spanish speaking Social Worker III position").)

¶ 86 (citing Naficy's Ex. 1 ("Naficy's Aff.") ¶ 5).[7]) Samaras also did not explain "any available option to wait for vacancies at a later date." (*Id.* ¶ 86 (citing Naficy's Aff. ¶ 5).[8]) Samaras did, however, tell Naficy that she could not be guaranteed employment with IDHS if she waived her right to bump. (*Id.* ¶ 87; IDHS's SOF ¶ 40.)

During the February 2, 2010 meeting, IDHS staff filled out a form for Naficy to sign, indicating her election to bump into the part-time Social Worker III position at Madden, and Naficy signed the form. (IDHS's SOF ¶¶ 41-42; Naficy's Add'l Facts ¶ 80.) Naficy's reassignment became effective on June 1, 2010. (IDHS's SOF ¶ 54.) As a part-time Social Worker III, Naficy worked from midnight to 6:45 a.m. on Tuesday, Wednesday, and Saturday. (*Id.* ¶ 55.) On August 1, 2010, Naficy returned to a full-time Social Worker III position at Madden with the same salary, number of hours, and schedule as before the June 1, 2010 reassignment. (*Id.* ¶ 56.)

At the time of the Howe layoffs, Jaime DeJesus ("DeJesus") was employed in the position of a Social Worker III (Spanish Speaking) at Madden. (*Id.* ¶ 36.) Although DeJesus is less senior than Naficy, IDHS did not offer Naficy the Social Worker III (Spanish Speaking) position at Madden. (*Id.* ¶¶ 36, 45.) Naficy does not speak Spanish, although she does speak Farci (Iranian) and Darai (Afghan). (Naficy's Resp. to IDHS's ¶ 36 (citing Naficy's Aff. ¶ 2).)

---

[7] The court views this disputed fact in the light most favorable to Naficy. (*Compare* IDHS's SOF ¶ 39 ("Samaras informed Naficy that as a result of bumping options exercised by more senior IDHS employees, her only bump option was to a part-time Social Worker III position.") (citing Samaras's Aff. ¶ 36).)

[8] The court views this disputed fact in the light most favorable to Naficy. (*Compare* IDHS's SOF ¶ 40 ("Samaras also informed Naficy that she could waive her right to bump and return at a later date to select a vacant position, if available.") (citing Samaras's Aff. ¶ 36).)

Sharon Byrne ("Byrne") was also employed in the position of a Social Worker III at Madden at the time of the Howe layoffs, and had less seniority than Naficy. (IDHS's SOF ¶ 44.) Unlike Naficy, Byrne waived her right to bump under the terms of the CBA. (*Id.*[9]) After the bumping process was complete, between February 22-26, 2010, IDHS and AFSCME representatives met with employees who had waived their right to bump to offer them, in seniority order, vacant positions for which they were qualified. (*Id.* ¶ 48.) Byrne elected to transfer into a vacant position as a Social Worker II at the Elgin Mental Health Center ("Elgin"). (*Id.* ¶ 51.) The Social Worker II position at Elgin was not originally on the January 2010 list of vacancies, but was added on February 19, 2010, in response to a request from AFSCME. (*Id.* ¶¶ 50, 52.) Naficy was never advised that the Social Worker II position at Elgin was available. (Naficy's Add'l Facts ¶ 84.)

3. Naficy's EEOC Charges

In early 2005, IDHS had undertaken a separate, earlier round of layoffs, and Naficy was "displaced" effective May 16, 2005. (Naficy's Add'l Facts ¶¶ 65, 70.) Prior to receiving official word of her May 2005 displacement, Naficy unsuccessfully sought to bump to a Social Worker II position on March 22, 2005. (*Id.* ¶ 67.) Naficy also unsuccessfully "made a bid" for a Social Worker III position at Madden, in an apparent attempt to apply for a vacancy posted on April 14,

---

[9] Although Naficy purports to deny many of IDHS's facts regarding Byrne, Naficy appears to be in general agreement that Byrne did not elect to bump and was allowed to fill a vacant position as a Social Worker II at the Elgin facility. (*Compare* Naficy's Resp. to IDHS's SOF ¶¶ 44, 51 *with* Naficy's Add'l Facts ¶ 84.) The court rejects Naficy's argument that IDHS has failed to cite "admissible evidence" describing the procedures followed by IDHS in filling available vacancies in February 2010. (*See* Naficy's Resp. to IDHS's SOF ¶¶ 50-52.) Pursuant to the Federal Rules of Civil Procedure, parties are entitled to rely on affidavit testimony by an individual with personal knowledge of the events recorded therein at the summary judgment stage. Fed. R. Civ. P. 56(c)(1)(A), (c)(4).

8

2005. (*Id.* ¶¶ 68-69.) Naficy filed a complaint with the EEOC regarding these layoffs in May 2005. (*Id.* ¶ 71.) On June 22, 2005, Naficy's supervisor, Judy Bailey ("Bailey"), explained to Naficy, "Your position will remain the same as it is now until the SW III position is posted, you bid on the position and <u>if</u> you are the successful bidder, then your position will change. We follow the same rules as any other vacant position. If I led you to believe anything else, I'm sorry." (*Id.* ¶ 72 (emphasis in original).) Naficy was placed in the position of Social Worker III on September 26, 2005. (*Id.* ¶ 74.)

On April 29, 2009, prior to the Howe layoffs, Naficy filed a second charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Naficy had been discriminated against from January, 2009 through April, 2009 because of both her national origin and a mental disability, and in retaliation for Naficy filing an internal complaint. (IDHS's SOF ¶ 57; *see also* Dkt. No. 1-2 ("6/19/09 EEOC Right-to-Sue Letter").)[10]

On March 25, 2010, Naficy filed a third charge of discrimination with the EEOC based on her February 2, 2010 reassignment to a part-time position with IDHS. (*Id.* ¶ 58.)

## APPLICABLE LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' only if the dispute's resolution might change the outcome of the suit under the governing law." *Spivey v. Adaptive Marketing LLC*, 622 F.3d

---

[10] These claims are not currently before the court. (*See* Dkt. No. 30 ("5/12/2010 Order") (dismissing Naficy's Third Amended Complaint with prejudice, while granting Naficy leave to proceed with her "reduction in hours" claim).) The May 2005 and April 29, 2009 EEOC charges are relevant, however, to Naficy's pending retaliation claim.

9

816, 822 (7th Cir. 2010). "Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial." *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 539 (7th Cir. 2011). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).

When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

1. Title VII Discrimination Claim

Title VII prohibits an employer from discriminating against its employees on the basis of national origin. 42 U.S.C. § 2000e-2(a). To survive summary judgment, a plaintiff alleging national origin discrimination "must present either direct or indirect evidence of discriminatory intent." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599 (7th Cir. 2010).

   A. Direct Method

Under the direct method of proof, a plaintiff may rely on either "direct evidence that acknowledges discriminatory animus on the part of the employer or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences." *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). Direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed." *Nagle v. Vill. of*

*Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Circumstantial evidence of discriminatory intent includes evidence such as "suspicious timing, ambiguous oral or written statements, [ ] behavior toward or comments directed at other employees in the protected group, [ ] evidence . . . that similarly situated employees outside the protected class received systematically better treatment, [and] evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Id.* at 1114-15.[11] Ultimately, "[u]nder the direct method of proof, a plaintiff's claim survives summary judgment if she can demonstrate 'triable issues as to whether discrimination motivated the adverse employment action.'" *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (quoting *Nagle*, 554 F.3d at 1114).

IDHS contends that Naficy cannot prevail under the direct method of proof because she "has no direct or circumstantial evidence of discrimination by anyone actually involved in the layoff." (Dkt. No. 59 ("IDHS's Mem.") at 6.) The court agrees that Naficy has failed to demonstrate any triable questions of fact under the direct method of proof.

Naficy first argues that IDHS has explicitly admitted an intent to discriminate, insofar as IDHS asserts that the position of Social Worker III (Spanish Speaking) "was only available for Spanish speaking bilingual employees." (Dkt. No. 64 ("Naficy's Resp.") at 9.) Naficy's evaluation of this evidence and her conclusion regarding IDHS's intent to discriminate are

---

[11] The Seventh Circuit has noted that this last type of circumstantial evidence "is substantially the same as the evidence required under the indirect method." *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003) (internal quotation marks and citation omitted). For ease of discussion, the court addresses Naficy's arguments regarding Byrne under the indirect method of proof. *Accord Silverman v. Bd. of Educ. of City of Chi.*, __ F.3d __, 2011 WL 941518, at *3 (7th Cir. Mar. 21, 2011).

fundamentally flawed. The focus of the direct method of proof is "whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (quoting *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)). IDHS's Spanish language requirement does not point directly to an intent on the part of IDHS to discriminate against Naficy based on her national origin. On its face, the requirement reasonably suggests only that IDHS needed, or desired, a specific skill set for this particular position. As Naficy admits, IDHS did not consider her to be qualified for the position of Social Worker III (Spanish Speaking) because Naficy does not speak Spanish. There is no evidence that, had Naficy been fluent in Spanish, she would nevertheless still have been denied the opportunity to bump into the Social Worker III (Spanish Speaking) position, nor is there evidence that employees of any particular national origin were favored, or disfavored, for this position. In short, IDHS's Spanish language requirement appears to be a legitimate, non-discriminatory job qualification, and is not reasonably interpreted as direct evidence of discriminatory animus.

The court also rejects Naficy's argument that discriminatory animus can be inferred from IDHS's failure to produce "justification . . . why special consideration was given to Spanish speaking employees but not Arabic speaking employees." (Naficy's Resp. 9.) IDHS has no affirmative obligation to rebut Naficy's evidence of discrimination under the direct method of proof, and IDHS's failure to explain its motivation for including a Spanish-language requirement does not, without more, reasonably suggest that IDHS's motivation was improper or unlawful. For the sake of completeness, the court notes that under the indirect method of proof, a method not pursued by Naficy on this point, the employer need only "articulat[e] a legitimate,

12

nondiscriminatory reason for its decision." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (describing this burden as "light"). IDHS has done just that, and Naficy has produced no evidence that IDHS's proffered reason is a pretext for discrimination. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010) ("Pretext means a dishonest explanation, a lie rather than an oddity or an error.") (quoting *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009)).

Naficy also argues that she has "[f]urther direct proof" of discrimination "from the allowance of [Byrne], a non-Iranian, to bump social worker II's for a position." (*Id.*) This argument is at odds with the undisputed evidence in the record. IDHS and Naficy both agree that Byrne was *not* allowed to "bump" into a Social Worker II position and that Byrne instead waived her right to bump. To the extent Naficy further argues that Byrne was "clearly treated better than [Naficy] was," (*Id.* at 12), the court addresses Naficy's argument under the indirect method of proof.

B. Indirect Method

Under the indirect method of proof, a plaintiff must first establish a prima facie case of discrimination by demonstrating that "(1) she is a member of a protected class, (2) she met her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." *Everroad*, 604 F.3d at 477. Once the plaintiff has established a prima facie case of discrimination, "the burden then shifts to the employer to offer a non-discriminatory reason for the adverse employment action." *Id.* "If the employer does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the employer's explanation is a pretext." *Id.*

13

The parties agree that Naficy is a member of a protected class due to her Iranian national origin, that she was meeting IDHS's legitimate employment expectations at the time of the Howe layoffs, and that she was subject to an adverse employment action when she was reassigned to a part-time position. IDHS argues that Naficy cannot prevail on her discrimination claim, however, because Naficy cannot identify any similarly situated non-Iranian employee who was treated more favorably by IDHS during the Howe layoffs. Without discussing the specific facts of her case, Naficy argues in conclusory fashion that "[s]imilarly situated non-Iranian Social Worker III's were clearly treated better than she was even though they had less seniority." (Naficy's Resp. 12.) Naficy further appears to assert that "ill-defined and vagues standards [were] applied in such a way that employees in a protected class" were treated less favorably than others during the Howe layoffs. (*Id.*)

The court assumes that Naficy's argument is based on IDHS's treatment of DeJesus and Byrne. For the reasons stated above, the court has found there to be no evidence that IDHS treated DeJesus more favorably than Naficy, or any evidence that IDHS's Spanish language requirement was a pretext for national origin discrimination. Although Naficy has made no further argument with regard to Byrne—other than asserting, without foundation, that Byrne was allowed to "bump" into the position of Social Worker II—the court will addresses IDHS's treatment of Byrne in some detail for the sake of completeness.

IDHS first asserts that Byrne and Naficy were not similarly situated, because Byrne elected to waive her right to bump. As IDHS argues, "[t]his choice alone is sufficient to explain the different outcomes between the two employees." (IDHS's Mem. 7.) The court agrees with IDHS's assessment of the evidence. "In order to meet the fourth prong of the prima facie case,

14

the plaintiff must demonstrate that the putative similarly situated employees were 'directly comparable to the plaintiff in all material respects.'" *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 395 (7th Cir. 2010) (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)). At the time that Byrne, with IDHS's permission, elected to transfer into the vacant Social Worker II position at Elgin, Byrne had waived her right to bump. This conduct put Byrne in a materially different procedural position than Naficy, who had elected to exercise her bump option on February 2, 2010. Because Byrne and Naficy made different choices during their respective February 2, 2010 meetings, they were not similarly situated with respect to future employment options made available to them. This difference in available employment options forms the crux of Naficy's discrimination claim. Because Byrne was not comparable to Naficy in this material respect, Byrne cannot be considered a similarly situated comparator for purposes of the court's analysis.

IDHS also contends that there is no evidence Byrne was treated more favorably than Naficy. Again, the court agrees. Viewing the evidence in the light most favorable to Naficy, it is undisputed that Naficy was given an option to either exercise her right to "bump," and receive guaranteed continued employment with IDHS, or to later select from a list of vacant positions, seniority permitting. Byrne appears to have been given the same options. The fact that Samaras did not stress the vacancy option during his February 2, 2010 meeting with Naficy does not change the reasonable inferences that can be drawn from the evidence in the record. Naficy was advised in the January 22, 2010 letter of her ability to waive her bumping option and later select a vacant position, seniority permitting, and there is no evidence that Samaras said or did anything to lead Naficy to believe this was no longer an option at the February 2, 2010 meeting.

15

Samaras's statement that "employees who waive their right to bump are not guaranteed employment with IDHS," (Naficy's Aff. ¶ 87), is consistent with both the January 22, 2010 letter and the terms of the CBA. More importantly, there is no evidence that Samaras treated Byrne more favorably than Naficy by offering Byrne different bumping options, guaranteeing Byrne continued employment even if she waived her bumping option, allowing Byrne to exercise a bump option outside the parameters of the CBA, or specially emphasizing Byrne's ability to waive her bumping option in favor of applying for a potential vacancy during the February 2, 2010 meeting. There is likewise no evidence in the record to suggest that Naficy would not have been offered the Social Worker II position in Elgin if Naficy had, like Byrne, waived her bumping option.

Because there is no evidence that Byrne was treated more favorably than Naficy during the Howe layoffs, and because there is no evidence that Byrne and Naficy were similarly situated at the time Byrne was offered the vacant Social Worker II position at the Elgin facility, the court concludes that Naficy has failed to establish a prima facie case of discrimination.

Because the court has found that Naficy cannot meet her initial burden under the indirect method of proof, the court need not further address whether IDHS's proffered reason is a pretext for discrimination. Naficy has argued that IDHS's "departure from policy" and "lying" establish pretext in this case. (Naficy's Resp. at 13.) The court finds no evidence to support either of these assertions, and Naficy has not supported this argument with any analysis of the facts or citation to the record. The fact that Naficy and Samaras have offered different versions of the February 2, 2010 meeting does not, by itself, establish pretext or demonstrate a genuine dispute of material fact requiring trial. As noted above, "[a] factual dispute is 'material' only if the

dispute's resolution might change the outcome of the suit under the governing law." *Spivey*, 622 F.3d at 822. Viewing the disputed facts in the light most favorable to Naficy, as the court must do for purposes of summary judgment, the court has nevertheless found that Naficy cannot meet her burden of proof under either the direct method of proof or the indirect method of proof. Accordingly, IDHS is entitled to summary judgment on Naficy's discrimination claim as a matter of law.

2.  Title VII Retaliation Claim

Finally, IDHS argues that "Naficy cannot establish any causal connection between her EEOC filings and her reassignment to a part-time position." (IDHS's Mem. 9.) Naficy fails to respond directly to this argument. Instead, under the heading "Indirect Proof of Discrimination," Naficy asserts,

> Plaintiff has shown that her supervisor, Judy Bailey, was aware of her EEOC activity and did not approve of them [sic]. At her first layoff soon after Plaintiff filed with EEOC, Bailey lied to plaintiff about her ability to obtain a Social Worker III position from the recall list.

(Naficy's Resp. 12.) Naficy's evaluation of the evidence is both unreasonable and irrelevant. First, Naficy has cited no evidence in the record that Bailey was either "aware of" Naficy's EEOC charges or that Bailey "did not approve of them." The record appears to be silent on both points. Additionally, no reasonable fact-finder could conclude from the evidence in the record that Bailey "lied to [Naficy] about her ability to obtain a Social Worker III position from the recall list" in 2005. Bailey's June 22, 2005 email states, "Your position will remain the same as it is now until the SW III position is posted, you bid on the position and <u>if</u> you are the successful bidder, then your position will change." (Naficy's Add'l Facts ¶ 72 (emphasis in original).) This statement simply does not address whether any Social Worker III vacancies had, in fact,

been posted at the time of Bailey's email. (*Compare id.* ¶ 73 ("Despite what Bailey said, however, the position, had already been posted in April, 2005.").) More importantly, Naficy has not explained how Bailey's 2005 email is relevant to the question of whether Naficy was retaliated against in 2010 for filing a charge of discrimination with the EEOC. Although Naficy speculates that "Bailey's input was a major source of the planning process" for the Howe layoffs, (*see* Naficy's Add'l Facts ¶ 87), this statement is unsupported by any admissible evidence.[12] Bailey's own deposition testimony indicates that Bailey had no involvement in either the preparation or execution of the Howe layoff plan. (IDHS's SOF ¶ 28.)

The court has not found any evidence in the record that could reasonably suggest Naficy's complaints to the EEOC were a "substantial or motivating factor" behind IDHS's treatment of Naficy during the Howe layoffs. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008)). Almost five years passed between Naficy's May, 2005 EEOC charge and the February, 2010 layoffs, and more than nine months separated the filing of Naficy's April 29, 2009 EEOC charge and the February 2, 2010 meeting at Howe. "When an employee's protected conduct is separated by a significant period of time from the adverse employment action, the proximity of the incidents does not support a causal connection between them." *Id.* The court is also not

---

[12] Naficy cites only to her own affidavit, which states "Mrs. Bailey's input was a major source of planning the process. She gave advice on how to proceed to her favorites but not to me." (Naficy's Aff. ¶ 6.) This statement does not indicate that Naficy has personal knowledge of Bailey's involvement in the planning process for the Howe layoffs or personal knowledge of the "advice" Bailey gave to others with regard to "how to proceed." The Federal Rules of Civil Procedure make clear that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). The court therefore cannot consider Naficy's speculative statement in its review of the factual record.

aware of any similarly-situated employee who did not complain of discrimination and was treated more favorably than Naficy.  *See Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (describing indirect method of proving Title VII retaliation claim).  The court therefore holds that as a matter of law, on the record before the court, IDHS is entitled to judgment in its favor on Naficy's retaliation claim.

## CONCLUSION

For the reasons set forth above, defendant Illinois Department of Human Services's motion for summary judgment (Dkt. No. 58) is granted with respect to plaintiff Hamida H. Naficy's remaining claims.  Judgement is entered in favor of defendant Illinois Department of Human Services on all remaining claims.  Civil case terminated in its entirety.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 22, 2011